United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Biscayne Bay Brewing Company, LLC, Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 20-24180-Civ-Scola |
| La Tropical Holdings, B.V., and others, Defendants. | ) ) ) | |

**Order on Motion to Dismiss**

This matter is before the Court upon the Defendants' motion to dismiss the Plaintiff's second amended complaint. For the reasons set forth below, the Court **denies** the Defendants' motion. (**ECF No. 48**.)

**1. Background**

The Plaintiff, Biscayne Bay Brewing Company, LLC ("BBBC"), brings this declaratory judgment action asking the Court to find that it has not infringed on trademarks owned by the Defendants. The Plaintiff also brings causes of action for tortious interference, deceptive and unfair trade practices, and unfair competition.

The Defendants are all subsidiaries of the Heineken beer company, which is based in the Netherlands. The Plaintiff names as Defendants in its complaint La Tropical Holdings, B.V., a Dutch company ("La Tropical Holdings"); Cerveceria La Tropical USA LLC, a Florida company ("La Tropical USA"); Heineken USA Inc., a New York company ("Heineken USA"); and The Lagunitas Brewing Company, a California Company ("Lagunitas"). The Plaintiff alleges that Lagunitas licenses certain trademarks at issue in this dispute from La Tropical Holdings and that Lagunitas, in turn, wholly owns La Tropical USA, which is a licensee or sublicensee of the trademarks at issue. (ECF No. 42 at ¶¶12- 13.) The Plaintiff also states that Lagunitas and Heineken USA have authority, in whole or in part, over La Tropical USA and La Tropical Holdings. (*Id.* at ¶ 17.)

BBBC is a craft brewery that was founded in Miami, Florida in 2012. Beginning in 2017, BBBC began developing a Miami-inspired Indian Pale Ale ("IPA") featuring tropical fruit aromas, and in February 2018, BBBC decided to call its IPA, Tropical Bay IPA. (*Id.* at ¶¶ 32-33.) After debuting in March 2018, Tropical Bay IPA has become BBBC's fastest-selling beer, expected to drive approximately $1.7 million in revenue through 2025. (*Id.* at 37.)

According to the Plaintiff, the Defendant La Tropical Holdings purports to the be the owner of intellectual property rights to an "old-world Cuban pilsner style beer named 'La Tropical,' which has never been widely or consistently distributed in the United States." (*Id.* at ¶ 39.) This beer was initially produced in Cuba beginning in 1888 and after it was seized by the Castro regime, fell into decline and completely ceased production in 2008. (*Id.* at ¶ 40.) The La Tropical trademark became the property of La Tropical Holdings in 2017. (*Id.* at ¶ 43.) The Plaintiff alleges that La Tropical beer was last available in the United States on May 22, 2016. (*Id.* at ¶ 45.)

In its complaint, the Plaintiff states that on February 3, 2020, an agent for the Defendants, Michael Weintraub, contacted BBBC's founder demanding information relating to the production and canning volumes for Tropical Bay IPA, alleging BBBC's IPA infringed on the Defendants' ownership of the word "tropical" for any use in connection with beer production. (*Id.* at 49.) Later, on May 27, 2020, La Tropical Holdings, through counsel, sent a letter to BBBC demanding that BBBC abandon its use of the Tropical Bay IPA trademark on the basis it constituted trademark infringement and false designation of origin under the Lanham Act, in addition to violating Florida law. (*Id.* at 51.) La Tropical Holdings warned the Plaintiff that its failure to abandon its use of its trademark would result in the Defendants initiating formal proceedings against BBBC. In its letter, La Tropical Holdings informed BBBC that Heineken purchased La Tropical in 2017, and since then, La Tropical Holdings has made substantial investments in the brand, including by purchasing real estate for and developing a full-service brewery and tap room that was to open in Miami's Wynwood neighborhood in the fall of 2020. (*Id.* at ¶ 52; *see also* ECF No. 42-2.) BBBC informed La Tropical Holdings, by letter from its own counsel, of its disagreement with La Tropical Holdings contentions. (*Id.* at ¶ 54; *see also* ECF No. 42-3.)

On February 8, 2020, after receiving La Tropical Holdings's letter, BBBC filed with the United States Patent and Trademark Office ("USPTO") to cover the mark Tropical Bay IPA, in connection with beer. (*Id.* at ¶ 38.) The application was approved for publication on June 3, 2020 and was published for opposition on June 23, 2020. (*Id.*) On July 22, 2020, La Tropical Holdings filed with the USPTO to oppose the registration of the Tropical Bay IPA mark. (*Id.* at ¶ 55.) Ultimately, the USPTO, after examining the Plaintiff's and the Defendants' marks, concluded there was no likelihood of confusion between the Tropical Bay IPA and La Tropical registrations. (*Id.* at ¶ 60.)

As a backdrop to the parties' trademark dispute, the Plaintiff alleges that the Defendants have unlawfully interfered with BBBC's relationship with Inter Miami, Miami's new professional Major League Soccer, LLC ("MLS") team. (*Id.*

at ¶¶ 3, 62.) In support of this allegation, the Plaintiff states that on January 23, 2020, the Plaintiff and Inter Miami agreed to jointly market BBBC beer, including a pilsner developed by BBBC which would bear Inter Miami's logo, at the Lockhart Stadium in Fort Lauderdale, Florida and retail and food service outlets wherever BBBC beer is sold. (*Id.* at ¶ 64.) To memorialize this agreement, on February 18, 2020, BBBC and Inter Miami entered into a sponsorship agreement, and on February 27, 2020, MLS approved the agreement between BBBC and Inter Miami, which was to have a term through December 31, 2020. (*Id.* at ¶ 65.) Inter Miami and BBBC worked to bring the "Inter Miami Pilsner" to life and on February 28, 2020, Inter Miami announced BBBC as the "official craft beer sponsor for Inter Miami" with Inter Miami selling BBBC beers such as its Miami Pale Ale, Tropical Bay IPA, and Inter Miami Pilsner at Inter Miami's stadium in Fort Lauderdale. (*Id.* at ¶¶ 67-70.)

While BBBC developed its relationship with Inter Miami, BBBC and counsel for La Tropical Holdings continued to try and resolve the parties' trademark dispute. (*Id.* at ¶ 75.) After Inter Miami purchased and served BBBC's beer, in March 2020, less than a month after BBBC and Inter Miami entered into their agreement, Inter Miami informed BBBC that an "issue" had arisen with BBBC's sponsorship and BBBC was directed to deal with executives from the MLS to resolve these "issues." (*Id.* at ¶ 76.) This about face came after Inter Miami informed the Plaintiff of its satisfaction with the parties' relationship and its belief that BBBC and Inter Miami would have a long and productive relationship. (*Id.* at ¶ 85.) The MLS executives informed BBBC that its deal with Inter Miami ran afoul of "certain exclusives owed by MLS to Heineken" pursuant to which Heineken USA and MLS had entered into an agreement whereby MLS would promote Heineken as the Official Beer of MLS. (*Id.* at ¶¶ 75-76.) BBBC inquired with MLS and Inter Miami as to the "issues" that had arisen through August 2020, but claims they were stonewalled by these two entities. (*Id.* at ¶ 79.)

Concurrent with this dispute, the Plaintiff claims that Defendants' agents, such as Matthew Weintraub who is "Head Brewer & Brewery Operations Manager" for La Tropical USA, bragged that the Defendants were taking actions to destroy BBBC's sponsorship with Inter Miami and BBBC's Tropical Bay IPA trademark. (*Id.* at ¶ 80.) BBBC claims it tried to find constructive paths for collaboration with the Defendants, but the Defendants, through their agents, continued to state that the Defendants were working to harm BBBC's beers, such as the Tropical Bay IPA and Inter Miami Pilsner. BBBC states that Inter Miami's pivot from expressing excitement at the relationship between the two entities to one of strained relations was a direct result of the Defendants' efforts, ultimately resulting in Inter Miami demanding

BBBC enter into a Termination and Release Agreement. (*Id.* at ¶¶ 85-86.) Despite their prior agreement, Inter Miami and MLS have informed the Plaintiff that they can no longer perform under their sponsorship agreement and have made no further purchases of BBBC's beer. (*Id.* at ¶¶ 90-91.)

### 2. Legal Standard

#### A. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. A district court must apply a two-part analysis to determine whether it has personal jurisdiction over a non-resident defendant. *Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, a district court must determine whether the applicable state's long-arm statute provides a basis for personal jurisdiction. *Id.* If so, then the district court turns to whether sufficient minimum contacts exist between the defendant and the forum state "so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Id.* (internal quotation marks and citations omitted).

Where a plaintiff meets its initial burden to make out a *prima facie* case for a court's exercise of personal jurisdiction over a defendant by providing sufficient evidence in the complaint to withstand a motion for to dismiss, courts may then consider affidavits, documents, or other testimony provided by the defendant challenging the allegations supporting personal jurisdiction. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *see also Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). Should a defendant provide such material, the burden then shifts back to the plaintiff to produce evidence supporting personal jurisdiction. *Stubbs*, 447 F.3d at 1360. All reasonable inferences must be construed in favor of the plaintiff. *Id.*

#### B. Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

#### A. Personal Jurisdiction Over La Tropical Holdings

To determine whether a plaintiff has adequately alleged personal jurisdiction over a foreign defendant, the Court first asks whether there is jurisdiction under Florida's long-arm statute and next determines whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). Florida's long-arm statute provides two means for subjecting a foreign defendant to the jurisdiction of Florida courts: 1) "a defendant is subject to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or related to a defendant's contacts with Florida—for conduct specifically enumerated in the statute"; and 2) "a defendant is subject to *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in substantial and not isolated activity in Florida." *Id.*

(internal quotations omitted) (emphasis in original) (discussing Fla. Stat. § 48.193). Under either form of personal jurisdiction, the defendant must have "'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This latter inquiry focuses on the defendant's contacts with the state, and not the "random, fortuitous, or attenuated" contacts it has by interacting with other persons affiliated with the state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Here, the Defendants argue that the Court lacks either form of personal jurisdiction over the Defendant La Tropical Holdings.

### (1) General Personal Jurisdiction

The Court turns first to the Defendants' argument that the Court lacks general personal jurisdiction over La Tropical Holdings. The Court agrees with the Defendants that the Plaintiff has failed to state that La Tropical Holdings is subject to the Court's general jurisdiction. Under Florida's long-arm statute, general jurisdiction "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (discussing Florida law). Thus, determining whether general personal jurisdiction is proper is a one-step inquiry which requires courts to determine whether the exercise of jurisdiction over a defendant would exceed constitutional bounds. *Id.*

A court may assert general jurisdiction over foreign defendants, consistent with the Due Process Clause, when their "'affiliations with the state are so continuous and systematic as to render them essentially at home in the forum State." *Waite*, 901 F.3d at 1317 (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted)). The Supreme Court explained in *Daimler AG v. Bauman*, that only a "limited set of affiliations with a forum" will render a defendant "essentially at home"—a corporate defendant is paradigmatically at home in the place where it is incorporated and where it has its principal place of business. 571 U.S. 117, 137 (2014). Outside of these paradigmatic circumstances, a corporate defendant will be considered at home in the "exceptional case" where it has operations that are "so substantial and of such a nature as to render the corporation at home in that state." *Waite*, 901 F.3d at 1317 (discussing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)). The Eleventh Circuit explained a corporate defendant may only be subject to general jurisdiction in Florida if its corporate activities "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.,* 789 F.3d 1201, 1205 (11th Cir.

2015). The Plaintiff, simply put, failed to satisfy this exacting standard with respect to the Defendant La Tropical Holdings, a Dutch corporation.

### (2) Specific Personal Jurisdiction

The Court's inquiry, then, focuses on whether the Plaintiff has adequately alleged specific personal jurisdiction over Defendant, La Tropical Holdings in its complaint. To determine whether the exercise of specific jurisdiction is proper, the Court first asks whether the defendant has engaged in conduct within the ambit of Florida's long-arm statute. If the long-arm statute applies, the Court then applies a three-part test to determine if the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment, asking: 1) whether the plaintiff has established that its claims arise out of or relate to at least one of the defendant's contacts with the forum; 2) whether the a plaintiff has demonstrated that the defendant purposefully availed itself of the jurisdiction; and 3) where the plaintiff has succeeded under prong one and two, whether exercise of specific jurisdiction would violate notions of fair play and substantial justice. *Waite*, 901 F.3d at 1312-13.

Upon review of the allegations in the complaint, the Court finds that the Plaintiff has adequately alleged specific jurisdiction over the Defendant, La Tropical Holdings. As an attachment to their complaint, the Plaintiff provides correspondence they had with David Donahue of the law firm Fross Zelnic Lehman & Zissu, P.C. who, at the time of the correspondence, represented La Tropical Holdings B.V. (ECF No. 42-2.) In the letter, La Tropical Holdings's counsel states, "[w]e represent La Tropical Holdings B.V., owner of the rights in the TROPICAL and LA TROPICAL marks for beer" and notes that since Heineken purchased the La Tropical brand in 2017, La Tropical Holdings "has made a substantial investment in the brand, including by purchasing real state [sic] for and developing a full-service brewery and tap room in the Wynwood section of Miami, Florida" which "is scheduled to open in fall 2020." (*Id.*)

Based on this letter, the Court finds that the Plaintiff has adequately alleged that the Defendant is "operating, conducting, engaging in, or carrying on a business or business venture in this state" and therefore has satisfied the Florida long-arm statute. Fla. Stat. 48.193(1)(a)(1). As the Florida long-arm statute applies, the Court must next determine whether the exercise of specific personal jurisdiction over La Tropical Holdings comports with the Fourteenth Amendment's Due Process Clause. Based on the allegations in the complaint, again, the Court finds it does. Specifically, the Plaintiff has adequately alleged that its claims arise out of La Tropical Holdings's contacts with Florida relating to its ownership of the TROPICAL and LA TROPICAL marks and development of

a full-service brewery in Miami, that the Defendant is purposefully availing itself of the jurisdiction by engaging in business here, and finally that its contacts with Florida are not random or fortuitous, but are in fact directed at the state.

As the Plaintiff has set forth a *prima facie* case of jurisdiction, the Defendant may attempt to defeat jurisdiction by providing affidavits, documents, or other testimony in an effort to challenge the allegations supporting such a finding. *Wyndham*, 447 F.3d at 1360. Here, the Defendant provides two such affidavits. The first declaration is from Bauke Appel (the "Appel Declaration"), an employee of the Heineken Group, who states that Heineken International B.V., a Dutch entity, wholly-owns La Tropical Holdings. (ECF No. 48-1, at 3.) He adds that Heineken International B.V. also wholly-owns Heineken U.S. Holdings, Inc., which in turn wholly-owns Lagunitas Brewing Company, which in turn wholly-owns La Tropical USA. (*Id.*) The Appel Declaration goes on to state that La Tropical Holdings "owns the 'La Tropical' mark and name, which it licenses to the Lagunitas Brewing Company, which plans to open and operate a brewery named Cerveceria La Tropical Brewery in Miami in 2021." (*Id.* at 5.) Aside from owning the TROPICAL and LA TROPICAL marks, the Appel Declaration avers that La Tropical is not engaged in the development or operation of La Tropical USA, does not own or produce La Tropical USA beer, and has never applied for or been granted a license to conduct business in Florida. (*Id.* at 5-7.) The Appel Declaration also addresses the cease and desist letter mentioned above, stating "[n]otwithstanding the language of the Cease and Desist Letter, La Tropical [Holdings] is not the entity that is opening the [La Tropical USA] brewery" which will instead be "located on land owned by [La Tropical USA] and . . . operated by the Lagunitas Brewing Company." (*Id.* at 7.) The second declaration, provided by Manuel Portuondo (the "Portuondo Declaration") summarily states that he is a manager of La Tropical USA, he is not an agent of La Tropical Holdings, and can make decisions without the input of La Tropical Holdings. (ECF No. 48-2, at 2.)

Where a defendant submits affidavits contradicting a plaintiff's assertions, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction, unless the affidavits provided by the defendant are conclusory. *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Where a plaintiff's complaint and evidence conflict with the defendant's affidavits, the Court must construe all reasonable inferences in favor of the plaintiff. *Id.* Upon review of the Plaintiff's complaint and evidence submitted in support of the Court exercising specific personal jurisdiction over the Defendant La Tropical Holdings, the Court finds that the Plaintiff's complaint and evidence are in conflict with the declarations

submitted by the Defendants in an attempt to defeat jurisdiction. Here, the Court finds persuasive that one of the pieces of evidence submitted by the Plaintiff is a letter, written by counsel for La Tropical Holdings, which directly contradicts the assertions set forth in the Appel Declaration. Given the existence of this contemporaneous correspondence written by La Tropical Holding's counsel, the Court finds it reasonable to infer, as the Court must at this stage, that La Tropical Holdings, which owns the marks at issue is engaged in business in Florida as its marks are being utilized by the Defendants for the development of La Tropical beer. *See id.* at 1275 ("Because the court must, for the purposes of jurisdiction, construe all reasonable evidentiary conflicts in favor of the Plaintiffs, the Court concludes that Plaintiffs submitted sufficient evidence to contradict the Defendants' affidavits."); *see also Spearmint Rhino Cos. Worldwide, Inc. v. D.B.D. Mgmt., Inc.*, 367 F. Supp. 2d 1362, 1364-65 (S.D. Fla. 2005). Therefore, at this stage, the Court finds that the exercise of specific personal jurisdiction over the Defendant La Tropical Holdings is justified both under the Florida long-arm statute and the United States Constitution.

The Court therefore **denies** the Defendants' motion to dismiss the Defendant La Tropical Holdings from this lawsuit for want of personal jurisdiction.

### B. Counts I, II, and III Against Lagunitas and La Tropical USA

The Defendants next argue that the Court must dismiss the Plaintiff's declaratory judgment claims, Counts I-III, against Lagunitas and La Tropical USA because the Plaintiff has failed to show the existence of an actual case or controversy between the Plaintiff and each of Lagunitas and La Tropical USA. The Defendants argue that while Lagunitas and La Tropical USA "would have standing *to bring* a trademark enforcement action as a plaintiff . . . neither of them has ever done so . . . and BBBC cites no case holding that a trademark licensee that has *not even threatened* an infringement claims is an appropriate defendant in an action seeking a determination of 'non-infringement' or abandonment of a trademark." (ECF No. 53, at 10 (emphasis in original).)

Conversely, the Plaintiff argues that Lagunitas and La Tropical USA are proper Defendants to the declaratory judgment counts because Lagunitas licenses the marks in question from La Tropical Holdings and La Tropical USA is a "purported licensee (or sublicensee through Lagunitas)" of La Tropical Holdings's marks. (ECF No. 51, at 14 (quoting ECF No. 42, at ¶¶ 12-13).) In support of its allegations, the Plaintiff cites *Geltech Solutions, Inc. v. Marteal, Ltd.*, No. 09-81027-Civ, 2010 WL 1791423 (S.D. Fla. May 5, 2010) (Marra, J.).

In *Geltech*, the licensee defendants, as here, argued because they were merely licensees and not the owners of the marks, that there was no case or controversy between the parties. *Id.* at *1. The licensee defendants also argued that the fact they "never threatened litigation or took any other affirmative action against" the plaintiff meant the court was without jurisdiction. *Id.* The court ultimately held that, while some "affirmative act on the party of the declaratory judgment defendant is generally necessary . . . there is no requirement that the defendant actually be able to sue the plaintiff at the time of the complaint." *Id.* at *3. Rather, where a declaratory judgment defendant has "shown a 'preparedness and willingness' to enforce its rights" there may exist a sufficient predicate controversy between the parties. *Id.*

Here, the Defendants' briefing which argues that neither Lagunitas nor La Tropical USA have asserted any claim with respect to the marks in question against BBBC is undermined by the Defendants' own declaration submitted in support of its motion to dismiss. The Appel Declaration states that "[o]n May 27, 2020, La Tropical, Lagunitas, Heineken USA Inc., and [La Tropical USA's] counsel sent a cease and desist letter to counsel for BBBC . . . request[ing] that BBBC cease the use of its purported trademark." (ECF No. 4801, at ¶¶ 49-50.) The Appel Declaration therefore states that Lagunitas and La Tropical USA, through its counsel, threatened BBBC with a cease and desist letter demanding that BBBC stop using its Tropical Bay IPA mark arguing it "'will inevitably cause consumers to confuse [BBBC's] beer with our client's." (ECF No. 48-1, at 7.) Certainly, this evidences a willingness and preparedness by Lagunitas and La Tropical USA to enforce its rights, making them proper parties to the Plaintiff's declaratory judgment counts.

The Court therefore **denies** the Defendants' request that the Court dismiss Lagunitas and La Tropical USA from Counts I-III of the complaint.

### C. Count IV, Tortious Interference

The Defendants next argue that BBBC fails to state a claim for tortious interference and therefore Count IV of the complaint must be dismissed. Under Florida law, the elements for a claim of "tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Palm Springs Mile Associates, Ltd. v. T-Mobile USA, Inc.*, No. 20-22481-Civ, 2020 WL 7711687, at *3 (S.D. Fla. Dec. 29, 2020) (Scola, J.). The Defendants argue that the Plaintiff

cannot prove the third element of a claim for tortious interference. (ECF No. 53, at 11.) The Plaintiff responds that its allegations are sufficient to overcome the Defendants' arguments as the Plaintiff's complaint alleges a contract between BBBC and Inter Miami was "scuttled" due to improper pressure by the Defendants, including actions taken by the Defendants in violation of statutory and common law unfair competition and trade practices. (ECF No. 51, at 16-17.) The Plaintiff argues, and the Defendants concede, that illegal conduct is an unjustified method of interference. (ECF No. 48, at 12.)

Upon review of the complaint, the Court agrees that the Plaintiff has stated a claim for tortious interference. Indeed, the Plaintiff alleges the existence of a business relationship between it and Inter Miami (ECF No. 42, at ¶ 127) which the defendant had knowledge of and interfered with, which ultimately caused damage to the Plaintiff. For instance, the Plaintiff states that Michael Weintraub, an individual "who held himself out as an agent or employee of the Heineken Group and its subsidiary/affiliates in Miami" (ECF No. 42, at ¶ 49) and who markets himself as "Head Brewer & Brewery Operations Manager" at La Tropical USA "bragged at a local beer industry event at the Tripping Animals Brewery in Doral, Florida that Heineken Group was working to eliminate Biscayne Bay's Tropical Bay IPA and Inter Miami Pilsner brand products, as part of a scheme to harm Biscayne Bay." (ECF No. 42, at ¶¶ 80, 83.) This specific anecdote seems to indicate that the Defendants were aware of the Plaintiff's business relationship with Inter Miami, and took actions to interfere with that relationship, causing harm to the Plaintiff. The final question, however, is whether this interference was unjustified.

Whether a defendant acted with intentional and unjustified interference with a business relationship requires the plaintiff to allege that the defendant acted without justification, which is a fact-intensive inquiry requiring "an examination of the defendant's conduct, motive, and the interests it sought to advance." *Duty Free Ams. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015). Determining whether interference is justified "requires a commonsense consideration of whether the conduct was sanctioned by the rules of the game and what is right and just under the circumstances." *Bluesky Greenland Envtl. Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013) (Hurley, J.) (internal quotations omitted). Here, the Plaintiff alleges that the Defendants' actions were in violation of the Federal Alcohol Administration Act of 1935, 27 U.S.C. § 201, *et seq.*, as well as similar Florida laws. In support of their claim, the Plaintiff states that Heineken USA, Lagunitas, and La Tropical USA, through direct or indirect agreements, unlawfully caused MLS or Inter Miami to purchase Heineken products to the exclusion of the Plaintiff's products. (ECF No. 42, at ¶¶ 93-95, 101.) As the

Plaintiff alleges the Defendants' actions interfering with its relationship with Inter Miami violated various state and federal laws, the Court finds that the Plaintiff has adequately alleged, at this stage of the litigation, unjustified interference sufficient to state a claim for tortious interference.

Finally, the Defendants claim that even if the Plaintiff can plead a *prima facie* case for tortious interference, dismissal of Count IV is nonetheless warranted as the Defendants' have a "privilege of interference." *Duty Free*, 797 F.3d at 1280. The "general rules is that an action for tortious interference will not lie where a party tortiously interferes with a contract terminable at will . . . [t]his follows because when a contract is terminable at will there is only an expectancy that the relationship will continue, and, in such a situation, a competitor has a privilege of interference to acquire the business for itself." *Bluesky*, 985 F. Supp. 2d at 1367. The Court agrees with the Plaintiff that the privilege does not apply here, as the contract the Defendants allegedly interfered with between BBBC and Inter Miami was for a set term (*See* ECF No. 42, at ¶ 65 (noting the Inter Miami agreement's term extended through December 31, 2020)) and was not terminable at will, as evidenced by the negotiation of the Termination and Release Agreement, which the Plaintiff attached to its amended complaint. (ECF No. 42-7.)

Consistent with the above, the Court **denies** the Defendants' request to dismiss Count IV of the complaint.

### D. Count V, Deceptive and Unfair Trade Practices

The Court next turns to the Defendants' argument that the Plaintiff's claim for deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") must be dismissed for failure to state a claim. The FDUTPA declares as unlawful any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Sat. § 501.204. While the FDUTPA "does not define the terms unfair or deceptive acts, courts have held that a deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *C&C Int'l. Computs. and Consultants, Inc. v. Dell Mktg. L.P.*, No. 11-60734-Civ, 2011 WL 13217489, at *2 (S.D. Fla. Nov. 7, 2011) (Zloch, J.) (cleaned up). To establish a violation under the FDUTPA, a plaintiff must prove three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Id.* The Defendants argue that the Plaintiff's FDUTPA claim must fail for two reasons: (1) the Plaintiff has failed to allege that the Defendants committed

deceptive acts or engaged in unfair practices; and (2) the Defendants state the Plaintiff cannot prove any actual damages.

The Court disagrees with the Defendants that the Plaintiff has failed to assert a deceptive act or unfair practice by the Defendants. The complaint states that the Plaintiff and Inter Miami engaged into a local sponsorship agreement, which was to extend through December 31, 2020, pursuant to which the Plaintiff would sell its beer at Inter Miami's stadium and that the two entities would jointly market BBBC beer. (ECF No. 42, at ¶¶ 64-65.) Prior to the dispute between Plaintiff and the Defendants, Inter Miami "represented in writing that 'we are more than happy with the partnership, and we know that it will be a long lasting relationship with the benefits we have assembled in our contract.'" (*Id.* at ¶ 85.) Notwithstanding the apparently successful partnership between BBBC and Inter Miami (*see, e.g., id.* at ¶¶ 71-75), in March 2020, Inter Miami informed BBBC that an "issue" had arisen with the BBBC's sponsorship with Inter Miami leading to the ultimate termination of the agreement between these parties. In their complaint, the Plaintiff states that Inter Miami informed BBBC that it could not perform under the agreement because of "complaints from Heineken USA or its . . . affiliates." (*Id.* at ¶ 89.) Simultaneously, the "Head Brewer & Brewery Operations Manager" of Defendant La Tropical USA was allegedly bragging at Miami-area brewery gatherings that the Defendants were taking actions to "disrupt, scuttle, and destroy Biscayne Bay's sponsorship with Inter Miami." (*Id.* at ¶ 80.) Courts construe the FDUTPA extremely broadly. *Ford Motor Co. v. Heralpin USA, Inc.*, No. 15-23638-Civ, 2015 WL 13799959, at *4 (S.D. Fla. Dec. 15, 2015) (Scola, J.). The conduct the Plaintiff describes—albeit without the benefit of full discovery—is conduct potentially underlying deceptive and unfair business practices that are characteristic of FDUTPA claims. *Id.* This conduct is in addition to the allegations of unlawful conduct discussed above with regards to the Plaintiff's claim for tortious interference. The Plaintiff has therefore adequately alleged a potentially deceptive or unfair business practice by the Defendants.

Next, the Court turns to the Defendants' second argument, that the Plaintiff fails to identify any damages under the FDUTPA. Actual damages under the FDUTPA "must directly flow from the alleged deceptive act or unfair practice." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012) (King, J.). The FDUTPA does not allow for recovery of nominal damages, speculative losses, "or compensation for subjective feelings of disappointment." *Id.* The Plaintiff states its damages can be measured by "the loss of contract benefits and value under its sponsorship of Inter Miami alongside the diminution in the value of all its products." (ECF No. 51, at 19.) The

Defendants state that these are "consequential damages" which cannot be recovered under FDUTPA. (ECF No. 53, at 12-13.) While the Court agrees with the Defendants that "the diminution in the value of all its products" may be consequential, the Plaintiff has adequately plead the existence of actual damages as the loss of contract benefits and other value arising from its sponsorship agreement with Inter Miami flow directly from the Defendants' alleged FDUTPA violation.

The Court therefore **denies** the Defendants' request that the Court dismiss the Plaintiff's FDUTPA claim.

### E. Count VI, Common Law Unfair Competition

The Defendants next argue that the Court should dismiss the Plaintiff's claim for unfair competition. "Under Florida common law, unfair competition is an umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters . . . [f]or example, a party may claim unfair competition under a variety of theories, including trademark infringement, and tortious interference with business relations." *Taslidzic v. Luther*, No. 18-80038-Civ, 2018 WL 313449 (S.D. Fla. May 21, 2018) (Reinhart, Mag. J.) (before the Magistrate Judge for an order upon the consent of the parties). As the Court found above that the Plaintiff has adequately stated a claim for tortious interference and for deceptive and unfair trade practices, the Plaintiff's claim for unfair competition is similarly sufficient to withstand dismissal at this stage. *Id.*

The Court, therefore, also **denies** the Defendants' request that the Court dismiss the Plaintiff's claim for unfair competition.

### F. Federal Rule 8

The Defendants' final arguments are made pursuant to Federal Rule 8. The Defendants argue that the Plaintiff has "egregious[ly]" lumped the Defendants together in violation of Federal Rule 8's pleading requirements and therefore fails to give each Defendant notice of the conduct it committed. (ECF No. 48, at 25-26.) Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Where a complaint alleges multiple defendants are liable for multiple claims, courts must determine whether the complaint gives adequate notice to each defendant. *Pro Image Installers, Inc. v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *2 (N.D. Fla. Jan. 15, 2009). While such complaints alleged against multiple defendants are typically read as making the same allegation

against each defendant individually, the factual allegations must be enough to raise a right to relief above a speculative level. *Id.* Simply lumping all defendants together fails to satisfy Rule 8. *Id.*

Upon review of the Plaintiff's complaint, the Court does not agree that the complaint fails to give notice to the Defendants of the Plaintiff's claims against them. The Plaintiff's complaint alleges the Defendants caused injury to the Plaintiff and sufficiently states which counts of the complaint are alleged against which Defendants and which Defendants committed what conduct. Accordingly, the Court finds that dismissal pursuant to Rule 8 inappropriate and **denies** the Defendants' request that the Court do so.

### 4. Conclusion

For the reasons stated above, the Court therefore **denies** the Defendants' motion to dismiss (**ECF No. 48**.) The Court also **denies as moot** the Defendants' motion to stay merits discovery pending resolution of their motion to dismiss. (**ECF No. 50**.)

**Done and ordered**, in Miami, Florida, on April 9, 2021.

_____
Robert N. Scola, Jr.
United States District Judge